UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~

In re
**ROBERT J. GILLIS,**               Chapter 7
    Debtor                            Case No. 09-16977-JNF

~~~~~~~~~~~~~~~~~~~~

**BRANCH R. YULES,**
    Plaintiff
v.                                  Adv. P. No. 09-1338
**ROBERT J. GILLIS,**
    Defendant

~~~~~~~~~~~~~~~~~~~~

MEMORANDUM

**I. INTRODUCTION**

The matter before the Court is the Defendant's Amended Motion to Dismiss, or in the Alternative, for Judgment on the Pleadings (the "Motion"), and the Plaintiff's Opposition. Through his Complaint, the Plaintiff asserts that a debt allegedly owed to him by the Defendant is nondischargeable pursuant to 11 U.S.C. § 523(a)(6). The Court heard the Motion on February 9, 2010 and requested the Plaintiff to file a supplemental brief in support of his contention that certain monies obtained by the Defendant/Debtor and his spouse were earmarked for the Plaintiff. The Defendant also filed a supplemental opposition.

1

The issue presented is whether the Plaintiff has stated a plausible claim for relief under 11 U.S.C. § 523(a)(6). Alternatively, in view of the submission of matters outside the record, the issue is whether the Defendant/Debtor is entitled to summary judgment. For the reasons set forth below, the Court shall enter judgment in favor of the Defendant/Debtor.

The Court now makes its findings of fact and rulings of law in accordance with Fed. R. Bankr. P. 7052.

**II. FACTS**

Robert J. Gillis (the "Debtor") filed a voluntary petition under Chapter 7 on July 23, 2009. On Schedule I-Current Income of Individual Debtor(s), he listed his occupation as "software engineer." In his Statement of Financial Affairs, he disclosed additional sources of income from book royalties and the internet sale of photographs.

The Plaintiff, Branch Yules ("Yules"), timely filed an adversary proceeding against the Debtor, seeking a determination that a debt arising out of a business venture between Yules and the Debtor's spouse is nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

A. The Complaint

Yules's allegations in the Complaint are critical to a determination of the Motion. The Court paraphrases those allegations as follows:

> Robert Gillis is the husband of Susan Gillis, both of whom reside at 154 Beach Street, Foxboro, MA 02035-1054.
>
> In or around July, 2003, Susan Gillis acquired real property consisting of two buildings known and numbered 23 and 25

Darrow Street, Pawtucket, Rhode Island (the "Property"), subject to two mortgages totaling approximately $110,000, by deed from David Wright.

In or around the fall of 2003, Susan Gillis contacted Yules and proposed that he join her in the business venture of renovating and selling the Property that she had previously acquired, because she needed him to capitalize the project.

Yules and Susan Gillis entered into a written "Operating Agreement" and a written "S.B. Realty Trust." Pursuant to the "Operating Agreement," Yules and Susan Gillis agreed to renovate and sell the Property with any profits distributed in accordance with an agreed upon formula. Title was to be taken in the "S.B. Realty Trust," a Massachusetts nominee trust. Yules's role under the agreement was to provide the money ($135,000) for the clearing of outstanding mortgages and renovation and/or other expenses of the Property, as well as interfacing with attorneys and accountants. Susan Gillis's agreed role was to renovate and manage the Property, including collecting and distributing rents, paying bills, and handling the advertisement and sale of the Property.

The agreement between the parties contemplated two outcomes to the parties' venture. The first was that the Property would be sold and the parties would divide the profits according to an agreed upon formula. Alternatively, the second was that Susan Gillis would have the Property appraised and buy out Yules's interest in the partnership according to the agreed upon formula. Under either circumstance, Yules was entitled to the return of his capitalization of the venture, together with a portion of any profits.

Although Yules and Gillis initially agreed to hold title to the Property through a nominee trust, the S.B. Realty Trust, as co-owners, this idea was abandoned after consulting with Rhode Island counsel and learning that such a trust would not limit Yules's personal liability.  However, Yules was considered an equitable co-owner of the Property, and it was anticipated that an appropriate title-holding agreement would

3

be formally executed to reflect their co-ownership.

On or about September 26, 2003, Yules provided to Susan Gillis the $135,000 for the clearing of title ($110,000) and renovation and/or other expenses ($25,000) related to the Property. The $135,000 was wired to McGunagle and Reidy, a law office in Cranston, Rhode Island, that handled the transaction. The sum of $110,000 supplied by Yules paid off the two outstanding mortgages and the other $25,000 of the money supplied by Yules was disbursed in increments from Attorney McGunagle to Susan Gillis.

Robert Gillis was aware of his wife's business venture with Yules. Robert Gillis did not have permission from Yules to mortgage the Property or to otherwise participate in the business venture.

On or around July 22, 2004, Robert Gillis and Susan Gillis, obtained a $224,000 loan from Champion Mortgage Co., based upon a $280,000 appraised value of the Property, i.e., such loan reflected an 80% loan to value ratio. The loan was secured by their conveyance of a first mortgage lien on the Property in favor of Champion Mortgage Co., in that amount.

Of the loan proceeds, $211,721.10 was disbursed to Robert Gillis and Susan Gillis, and Foxborough Savings account documents reflect their receipt of such funds on July 19, 2004 (of the $224,000.00 mortgage proceeds, $10,510.90 went to disbursements to pay the Gillis's pre-existing creditors, such as a Sears credit card and the City of Pawtucket, and $1,768.00 was used for loan origination fees).

The vast majority of the mortgage proceeds were to have been used to buy out Yules's interest in the venture. At a minimum, Yules was entitled to the return of his initial $135,000.00 capital investment. However, none of the mortgage proceeds were used to buy out Yules's interest in the venture.

Yules neither had knowledge that Robert Gillis and Susan Gillis had actually applied for and obtained a mortgage on the Property, nor did they ever inform Yules that they had

obtained a mortgage.

However, had Yules been notified in July of 2004 that they had obtained a mortgage on the Property and his interest in the partnership been bought out as agreed in the Operating Agreement, the business venture would have been profitable. Pursuant to the agreed upon formula in the Operating agreement, their financial interests would been calculated as follows:

| | |
|---|---|
| Stipulated appraised value | $280,000.00 |
| Less Plaintiff's Capitalization | -$135,000.00 |
| Equals total profit | =$145,000.00 |

Total profit divided by two ($145,000.00/2) = $72,500.00 profit for each.

Susan Gillis's share = $72,500.00 (primarily in equity in the Property).

Yules's share would have been:
   Returned capitalization ($135,000.00) + his profit (72,500.00) = $207,500.

Thus, of the $211,721.10 of mortgage proceeds Robert Gillis and Susan Gillis jointly received, $207,500 should have been used to buy out Yules. Yules, however, has not received any funds from Robert and Susan Gillis, either from the mortgage or otherwise.

Robert Gillis was not entitled to any of the mortgage proceeds.

Rather than buying out Yules according to the Operating Agreement, Robert and Susan Gillis misappropriated and used the vast majority of the mortgage proceeds on their personal expenditures, including but not limited to the following:

   a. $6,100.00 to Robert Gillis. See Check Nos. 622 & 19291.

   b. $19,625.00 related to a Saab automobile. See

    Check Nos. 546 & 597.

    c. $550.00 for "Pats tx," i.e., Patriots tickets. See Check No. 568.

    d. $5,000.00 for an unrelated legal matter. See Check No. 575.

    e. $3,500.00 for legal fees in an unrelated matter. See Check No. 596.

    f. $1,000.00 for legal fees in an unrelated matter. See Check No.616.

    g. $1,350.00 for legal fees in an unrelated matter. See Check No. 618.

    h. $18,400.00 for legal fees to defend against Yules's claims against them. See Check Nos. 667, 769, 772 & 749712.

    I. $3,750.00 for a hot tub. See Check Nos. 671 & 675.

    j. $1,840.07 for property taxes on their Foxboro home. See Check No. 692.

    k. $2,000.00 for a deposit on a 32ft. boat. See Check Nos. 681 & 792.

As a result of Robert and Susan Gillis misappropriating the funds for their personal living expenses, by July 20, 2005, just one year after receiving the $211,721.10 mortgage loan proceeds, these funds had been depleted to an amount of $2,545.61.

By the summer and fall of 2004, Susan Gillis had cut off all communication with Yules and did not respond to his phone calls. Yules, in an attempt to discover the status of the business venture, drove to Pawtucket, RI, to view the Property. While in Pawtucket, Yules decided to investigate the real estate

> filings with respect to the Property at the Pawtucket City Hall, whereupon Yules learned for the first time that Robert and Susan Gillis had mortgaged the Property.
>
> Yules filed an action in the Norfolk Superior Court, C.A. No. 05-00092, against Robert and Susan Gillis on January 18, 2005, and service was made in February, 2005.
>
> At the time Robert Gillis and Susan Gillis were served with the Superior Court action, they still had approximately $100,000.00 of Yules's funds. Rather than returning or setting aside these funds, Robert and Susan Gillis used the funds to hire attorneys to defend against Yules's claim for such funds.
>
> Thereafter, Susan Gillis filed for bankruptcy protection, Chapter 7 Case No. 05-23528, and Yules commenced an adversary proceeding, Adv. Proc. No. 06-01007. The Hon. Rosenthal, J., entered judgment in favor of Yules determining that Susan Gillis's debt was non-dischargeable under 11 U.S.C. § 523(a)(6), as a result of Susan Gillis's willful and malicious injury to Plaintiff, and also revoked Susan Gillis's discharge under 11 U.S.C. § 727(d)(1) for having obtained the discharge by fraud and under 11 U.S.C. § 727(d)(2) for fraudulently failing to report the acquisition of certain property to the Bankruptcy Trustee. These determinations were subsequently affirmed by the Bankruptcy Appellate Panel for the First Circuit, BAP No. MB 08-067, and Susan Gillis was sanctioned pursuant to Fed.R.Bankr.P. 8020 for filing a frivolous appeal. Susan Gillis has appealed these rulings to the First Circuit Court of Appeals.

Based upon the foregoing allegations, Yules alleged that the Debtor and his wife converted all of his interest, investment and profits by depositing the funds in a personal account and spending the vast majority of the funds on their personal and family expenses. According to Yules, the only result that could flow from these wrongful acts was an injury to him. In his Complaint, he asserted that Robert Gillis wrongfully lived off of his funds

for a year and until the funds were completely depleted. In Yules's view, the Debtor committed a willful and malicious injury by converting and misappropriating Yules's funds for his own benefit and use.

B. <u>Yules v. Susan Gillis (Adv. P. No. 06-1007)</u>

As alleged in his Complaint, Yules commenced an action against Susan Gillis and obtained a judgment against her under 11 U.S.C. § 523(a)(6). In that adversary proceeding, prior to the entry of final judgment by Judge Rosenthal, Judge Robert Somma conducted a trial, following which he granted a directed verdict in favor of the debtor with respect to counts under 11 U.S.C. § 523(a)(2)(A) and (a)(4), as well as 11 U.S.C. § 727(d)(3). In a written "Memorandum of Decision and Order on Motion of Susan Gillis for Directed Verdict," dated June 28, 2007, Judge Somma found that Yules acknowledged that he had not met his burden of proof under 11 U.S.C. § 523(a)(2)(A) and voluntarily sought dismissal of that count. With respect to Yules's count under 11 U.S.C. § 523(a)(4), Judge Somma determined that Yules failed to establish that Susan Gillis acted in a fiduciary capacity in connection with their business venture. He stated:

> The trust agreement executed by the parties became inoperative and ineffective by their mutual agreement when the plaintiff learned that it could not serve as a title-holding vehicle to limit the plaintiff's personal liability. Moreover, the operating agreement setting forth their respective rights and obligations is not a partnership agreement but rather a simple contract incident to the Venture. In neither case - - inoperative trust agreement or operating project agreement - - does the debtor act in a fiduciary capacity as to the plaintiff. Lastly, any resulting or constructive trust imposed in these circumstances would be employed as a remedy and would not satisfy the

requirement of fiduciary capacity as used in § 532(a)(4).

Judge Somma denied the motion for judgment on partial findings with respect to the count under 11 U.S.C. § 523(a)(6) and the counts under 11 U.S.C. § 727.

Judge Rosenthal, who subsequently was assigned the case, entered a final judgment, with the consent of the parties, based upon his review of the record of the adversary proceeding, including the transcripts of the evidentiary hearings and trial held on February 21, 2007, March 14, 2007 and August 22, 2007. In reaching his decision that Susan Gillis willfully and maliciously injured Yules, Judge Rosenthal found the following facts:

> Here the debtor/defendant, Susan Gillis, knew she owed the plaintiff, Branch Yules, money. In fact, at least by her way of thinking, she set it aside, but she asserts in her rather unconvincing statement that she didn't send him the money because she couldn't reach him. . . .
>
> She [Susan Gillis] acknowledges that things were tight, that she couldn't do everything, so she decided obviously consciously to use the funds she earmarked to attempt to complete the project, but that conscious unilateral decision proved to be further disaster, and her situation plummeted downhill into financial ruin.
>
> Although initially Ms. Gillis claimed she used the earmarked funds for the project in which Mr. Yules was involved, ultimately she acknowledged that she used much, if not most, of the subject funds for other personal purposes, such as paying her attorneys; she bought an automobile; she paid rent, she bought a hot tub, et cetera. At various points during the trial, Ms. Gillis's justification for using the funds for personal use was some of the money was hers and she was entitled to use it to, quote, "no harm, no foul," end quote, because if Mr. Yules had been paid, the payment would have been recoverable as a preference.

Transcript, pages 4-5. Judge Rosenthal determined that Susan Gillis's testimony was

incredible, noting contradictions, memory lapses and long delays, as well as failures to amend schedules and even to appear at the section 341 meeting of creditors and to provide a complete detailed accounting. Additionally, Judge Rosenthal entered a judgment revoking Susan Gillis's discharge. The United States Bankruptcy Appellate Panel for the First Circuit affirmed Judge Rosenthal's order revoking Susan Gillis's discharge. It did not specifically address the issue under 11 U.S.C. § 523(a)(6), finding it was subsumed and disposed of in its decision under 11 U.S.C. § 727(d)(1).

    C. Yules's Supplemental Materials

In his Supplement to his Opposition to the Motion, Yules submitted a Joint Stipulation of Facts, executed by counsel to Yules and counsel to Susan Gillis, and a statement of Stipulated Facts, executed by counsel to Yules and counsel to the Chapter 7 trustee in Susan Gillis's case, both of which were filed in Adv. P. No. 06-1007, as well as copies of the Operating Agreement and Declaration of Trust referenced by Judge Somma in ruling on Susan Gillis's motion for a directed verdict. Additionally, he submitted the Champion Loan Application and Champion Mortgage Disbursement Statement.

**III. ANALYSIS**

A motion to dismiss under Rule 12(b)(6) must be granted unless the complaint contains sufficient factual matter, accepted as true, to "'state a claim to relief that is plausible on its face.'" Cunningham v. Nat'l City Bank, 588 F.3d 49, 52 (1st Cir. 2009) (citing Ashcroft v. Iqbal, __U.S. __, 129 S.Ct. 1937, 1949 (2009), and quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). If matters outside the pleadings are presented to and

not excluded by the court, the motion to dismiss must be treated as a motion for summary judgment under Rule 56. *See* Fed. R. Civ. P. 56(d), made applicable to this proceeding by Fed. R. Bankr. P. 7012.

The court in Desrosiers v. Transamerica Fin. Corp. (In re Desrosiers), 212 B.R. 716, 718 n.1. (Bankr. D. Mass. 1997), explained the relationship between Rule 12(b)(1) and (b)(6):

> Transamerica based its Motion to Dismiss the Adversary Proceeding on Federal Rule of Civil Procedure 12(b)(1), made applicable here by Federal Rule of Bankruptcy Procedure 7012. Rule 12(b)(1) relates to the lack of subject matter jurisdiction. . . . Transamerica argues only that the causes of action raised in this adversary proceeding are barred by the doctrine of res judicata. Thus, the applicable ground for dismissal is the Complaint's failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6); *see, e.g.*, Mullens v. United States, 785 F.Supp. 216, 222 (D. Me. 1992) (dismissing a cause of action barred by res judicata under Fed. R. Civ. P. 12(b)(6)). Further, because Transamerica relies on matters outside the pleadings, the Court must treat the motion as one for summary judgment under Federal Rule of Bankruptcy Procedure 7056, incorporating Federal Rule of Civil Procedure 56. *See* Fed. R. Civ. P. 12(b) ("If, on a motion asserting the defense numbered (6) to dismiss . . . matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56"). . . . Rule 12(b) requires that all parties "be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56" . . . .

212 B.R. at 718 n.1. Because matters outside the pleadings have been presented to the Court, the Court shall treat the Debtor's Motion as a Motion for Summary Judgment.

To prevail on a complaint under 11 U.S.C. § 523(a)(6), the plaintiff must establish by a preponderance of the evidence, *see* Grogan v. Garner, 498 U.S. 279 (1991), that the debtor willfully and maliciously intended to injure him or his property. In Kawaauhau v. Geiger, 523 U.S. 57 (1998), a unanimous Court performed the following analysis:

11

> We confront this pivotal question concerning the scope of the "willful and malicious injury" exception: Does § 523(a)(6)'s compass cover acts, done intentionally, that cause injury . . ., or only acts done with the actual intent to cause injury . . .? The words of the statute strongly support the [latter] reading.
>
> The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury." Or, Congress might have selected an additional word or words, i.e., "reckless" or "negligent," to modify "injury." Moreover, . . . the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the *consequences* of an act," not simply "the act itself." Restatement (Second) of Torts § 8A, comment a, p. 15 (1964) (emphasis added).

Id. at 61-62 (footnote omitted). The Court held that, "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." Id. at 64.

Based upon the allegations set forth in Yules's Complaint and the supplemental materials he submitted, the Court finds that Yules has not submitted sufficient evidence from which this Court could find that Robert Gillis, who was not a participant in the business venture between Yules and Susan Gillis and who did not sign the Operating Agreement, willfully and maliciously injured Yules's property, namely his share of profits from the sale of the Property. Although the Debtor was aware that his spouse was in a business venture with Yules, the stipulated facts that were part of the record in Adv. P. No. 06-1007 do not establish that the Debtor was aware of any specific contract provisions set forth in the Operating Agreement or that he was aware that his wife was not entitled to refinance the property and use the proceeds in any manner she deemed fit. Although Susan

Gillis was found to have willfully and maliciously injured Yules, there is nothing in the record from which this Court could impute her conduct to the Debtor in this adversary proceeding.

Yules did not allege that he met the Debtor or had any interactions with him in connection with the Property or the business venture he had with Susan Gillis. There was no evidence that the Debtor was engaged in the purchase and renovation of rental properties or that he assisted his spouse in her endeavor with Yules.

Yules maintains that, once he commenced his action in the Norfolk Superior Court, the Debtor and his spouse should have set aside the remaining monies from the refinancing and that the Debtor's failure to do so constituted a willful and malicious injury. The Court rejects Yules's argument. At the commencement of the Norfolk Superior Court action, Yules could have sought either a trustee process attachment of the monies in the Foxborough savings account maintained by Susan Gillis or an injunction against the Debtor and his spouse. In the absence of such a court order, the Debtor's use of the money from the refinancing did not constitute a willful and malicious injury to Yule's property. The monies simply were not designated as belonging to Yules.

**IV. CONCLUSION**

In view of the foregoing, the Court finds that Yules's Complaint fails to state a plausible claim for relief, and, in light of the supplemental materials submitted, warrant the entry of summary judgment in favor of Gillis. Accordingly, the Court shall enter an order granting Gillis summary judgment.

By the Court,

*Joan N. Feeney*

Joan N. Feeney
United States Bankruptcy Judge

Dated: March 24, 2010
cc: Gregory D. Lorincz, Esq., Michael B. Feinman, Esq.